SEYFARTH SHAW LLP
Dana L. Peterson (SBN 178499) dpeterson@seyfarth.com
Jonathan D. Martin (SBN 188744) jmartin@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.

JEREMY L. FRIEDMAN (SBN 142659) jlfried@comcast.net
Attorney at Law
2801 Sylhowe Road
Oakland, California 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087

Attorney for Plaintiff
FERNANDO DAROSA

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO DAROSA,<br><br>  Plaintiff,<br><br>  v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>  Defendant. | Case No. C07-03114 SI<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: November 16, 2007<br>Time: 2:00 PM<br>Place: Courtroom 10, 19th Floor<br>Judge: The Honorable Susan Illston |

Plaintiff FERNANDO DAROSA and Defendant KAISER FOUNDATION HEALTH PLAN, INC. submit this Joint Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

1. **JURISDICTION AND SERVICE**

This is an action brought pursuant to the federal Americans with Disabilities Act, the California Fair Employment and Housing Act, and state common law precluding termination in violation of statutory public policies. Subject matter jurisdiction over the ADA claim is predicated on federal question jurisdiction, and this Court has supplemental jurisdiction over the

JOINT CASE MANAGEMENT STATEMENT – CASE NO. C07-03114 SI

FEHA and state claim. The parties are not aware of any issues regarding personal jurisdiction or venue. All parties have been served.

## 2. FACTS

### A. Plaintiff's Statement of the Facts

Plaintiff Fernando daRosa brings this employment discrimination action against his former employer, Kaiser Foundation Health Plan, following his termination on January 31, 2006. In July 2005, plaintiff was diagnosed with narcolepsy – a serious medical condition with both physical and mental components – and was required to take a medical leave for approximately six weeks while his medical doctors evaluated his condition and set a plan of treatment. After returning to work on August 22, 2005, plaintiff continued to have brief problems with his narcolepsy while he worked with his physicians to find the correct balance of medication. As a result, plaintiff was required to miss single or partial days on a few occasions between his return in August 2005 and his termination in January 2006.

In connection with his medical leave and return to work, Mr. daRosa informed Kaiser and his immediate supervisor, Margie Roper, about his medical condition and his need for time to find the correct balance of medications. Ms. Roper then changed her behavior towards plaintiff in a clear and consistent manner. She stopped interacting with him on a regular basis, and had practically no words with plaintiff either on work or non-work matters for approximately two weeks. On the occasions when plaintiff attempted to talk to Ms. Roper about his medical condition, its potential impact on his working schedule and his need for accommodation and time to see his physicians and find the right balance of medications, Ms. Roper simply replied: "well you should try to stay awake, Fernando." She made no attempt to engage plaintiff in any discussion over possible reasonable accommodations and she continued to take the position that time missed due to the narcolepsy would subject plaintiff to discipline.

In January 2006, plaintiff's doctors required him to go out on disability for another period of time, to allow them to work with plaintiff and adjust the medications. Plaintiff saw his physician (at Kaiser) on January 24, 2006, and was placed on medical leave from January 25, through March 25, 2006. Medical documentation for his absence was sent to Kaiser by 8:48 a.m

on January 25, 2006. Despite her knowledge and possession of the documentation, six days later Ms. Roper terminated plaintiff, falsely accusing him of abandoning his job and being a "no call, no show for January 25, 26, 27, 30, and 31, 2006." Kaiser did not offer plaintiff the opportunity to take a medical leave from work pursuant to federal and state disability leave statutes.

After his termination, Mr. daRosa continued to communicate with Kaiser's Human Resources personnel regarding his employment. He was informed that Ms. Roper was terminated from Kaiser in part because of the way she handled plaintiff's termination. Nevertheless, Mr. daRosa was told he was not eligible to be rehired by Kaiser.

**B.    Defendant's Statement of the Facts**

Without responding point-by-point to Plaintiff's allegations above, Defendant disputes Plaintiff's claims. Defendant was not put on notice of Plaintiff's alleged disability or his alleged need for accommodation while he was employed. Defendant further states that it terminated Plaintiff for being absent from work for multiple consecutive days without directly contacting his supervisor, a legitimate non-discriminatory reason for termination. Defendant's managers did not receive the faxed notice of his alleged need for leave. The notice stated no reason for the leave and did not mention narcolepsy. At some point after his termination, Plaintiff contacted Human Resources to challenge the termination, and Human Resources invited him to provide documentation of his alleged disability, but he did not.

The factual issues in the case include the following:

1. Whether Plaintiff had narcolepsy.
2. Whether Defendant was aware prior to Plaintiff's termination that Plaintiff suffered from narcolepsy.
3. Whether Plaintiff properly notified Defendant of a legitimate excuse for his absence prior to being terminated.
4. Whether the absence and failure to contact his supervisor in January 2006 was caused by a protected disability.
5. Whether Plaintiff's absences before January 2006 were caused by narcolepsy.
6. Whether Plaintiff ever requested accommodation for his alleged narcolepsy.

3. **LEGAL ISSUES**

   A. **Plaintiff's Statement of Legal Issues**

   1. Whether plaintiff is a qualified individual who suffers from a physical or mental disability, as defined by either the ADA or FEHA.

   2. Whether plaintiff is regarded as having such a disability, or as having a medical condition which may become a disability.

   3. Whether Kaiser's failure to provide plaintiff with medical leave and its termination of plaintiff in retaliation for his need for medical leave violates federal or state statutes (including FEHA) and public policies (including federal and state family and medical leave protections).

   4. Whether an employer, after failing to engage plaintiff in a discussion about reasonable accommodations prior to his termination, may contend that the terminated employer could not have performed the functions of his job even with a reasonable accommodation.

   B. **Defendant's Statement of Legal Issues**

   1. Whether Plaintiff suffered from a protected disability.

   2. Whether Plaintiff failed to mitigate his alleged losses by timely providing information to Defendant substantiating his alleged disability.

   3. Whether a two-month leave of absence would have been a reasonable accommodation for Plaintiff.

   4. Whether the decision to terminate Plaintiff was based on an actual or perceived disability, or a condition that could become one.

4. **MOTIONS**

   The parties have filed no prior or pending motions. Defendant anticipates that it may file a dispositive motion if the facts and law warrant it. Plaintiff does not anticipate any motions at this time.

   If a dispositive motion is to be filed in this action, Plaintiff requests that it be set for hearing with sufficient time to permit the party opposing any such motion to properly prepare

responsive papers. Plaintiff's counsel does not believe the amount of time otherwise provided is sufficient, and does not wish to be placed at a disadvantage as a matter of scheduling. Defendant opposes such a request and believes that the local rules regarding the filing of motion-related papers are sufficient and should apply.

5. **AMENDMENT OF PLEADINGS**

The parties are unaware at this time of any reasons for parties, claims, or defenses to be added or dismissed.

6. **EVIDENCE PRESERVATION**

Both parties have taken steps to preserve evidence relevant to the issues reasonably evident in this action, including preservation of any electronically recorded material. Plaintiff asserts that prior to the commencement of this action, he was told conflicting accounts as to the preservation of records related to his employment and termination, and due to this, and for other reasons, plaintiff's counsel requests that defendant be required to make thorough effort to preserve relevant records and notes, whether they would be found in personnel files or elsewhere in the files of individuals connected to Mr. daRosa's employment and termination. Defendant disputes that there is any issue relating to the preservation of records and believes that it has taken, and will continue to take, reasonable measures to preserve evidence.

7. **DISCLOSURES**

The parties intend to exchange their Initial Disclosures by November 14, 2007.

8. **DISCOVERY**

The parties have agreed to the following discovery plan.

   A.   **Non-expert discovery**

Defendant will take Plaintiff's deposition. Defendant believes that it will need two seven-hour days of actual deposition time to complete Plaintiff's deposition. Plaintiff disagrees, contending that defendant's proposal is unduly burdensome, unnecessary and contrary to the federal and local rules. Prior to Plaintiff's deposition, Defendant will serve a request for production of documents. Defendant also intends to conduct discovery relating to Plaintiff's medical history/records, and may conduct additional written discovery. It will conduct

additional depositions as necessary.

If the circumstances warrant, Defendant anticipates that it will conduct one or more independent medical examinations to evaluate any emotional distress claimed by Plaintiff and to determine whether Plaintiff suffers from the disability he alleges (narcolepsy); what effect, if any, that condition had on Plaintiff's ability to perform the essential functions of his job; and what accommodations may have been reasonable to enable Plaintiff to perform his essential functions.

Plaintiff intends to take deposition(s) of his former supervisor and any relevant decisionmakers with Defendant. He will serve written discovery prior to the depositions, including but not necessarily limited to a request for production of documents, interrogatories, and a request for admissions. Plaintiff may also propound discovery on Kaiser with respect to what may prove to be a systemic problem at Kaiser involving discriminatory terminations. Although not brought as a class action, such systemic problems – if proven – would support plaintiff's allegations in this case. (Defendant denies any such "systemic problems.") Plaintiff will conduct additional discovery as necessary.

Other than as described above, the parties do not propose any limitation on, or change in, the number of discovery requests or the duration of discovery, other than what the federal and local rules already provide. The parties do not propose any limitation on the subject matter of discovery, other than what the federal and local rules already provide.

**B.     Expert discovery**

The parties may designate experts as necessary, and they may determine to depose each other's designated experts. Defendant requests that the Court consider setting expert-related deadlines after the time at which dispositive motions would be decided, so the parties can avoid the expense of experts if the case is disposed of via motion practice. Plaintiff requests that expert identification and reports proceed expeditiously, but would be willing to delay expert depositions until after dispositive motions are heard. However, as plaintiff believes this case is not likely to be appropriate for summary adjudication, plaintiff would not want any delays in expert discovery to extend the time for trial.

C.  **Deadlines for completion of discovery**

The parties believe that they can complete an initial round of written discovery by February or March 2008. Depositions would then be completed by August 2008. Any additional written discovery would be completed shortly thereafter. Expert discovery would then follow.

Plaintiff proposes that expert disclosures be made pursuant to Rule 26(a)(2)(C), with simultaneous disclosures by both sides in September 2008, with rebuttal experts disclosed 30 days later. The parties should then be permitted to complete any expert depositions by December 2008, with a trial date by January 31, 2009. As discussed above, Defendant requests that expert discovery be scheduled such that the parties can begin expert-related discovery after dispositive motions (if any) have been decided.

9.  **CLASS ACTION**

Not applicable.

10. **RELATED CASES**

Not applicable.

11. **RELIEF**

Plaintiff seeks compensatory and punitive damages, as well as an award of attorneys' fees. At this early stage in the litigation, without discovery and the opportunity to develop any expert analysis, plaintiff is unable to provide specific calculations as to the amounts.

Nevertheless, plaintiff states that his compensatory damages will include economic and non-economic losses. For economic losses, plaintiff will seek past lost wages, calculated at the amount of plaintiff's salary, plus the value of his benefits, minus any employment earnings he has obtained since the date of his termination, calculated to the date of judgment. Plaintiff may also seek pre-judgment interest, if appropriate. In addition, plaintiff will be entitled to an award of "front pay" calculated at the differential between what Mr. daRosa is likely to make in the future and what he would have made had he not been discriminatorily terminated. Such front pay should be calculated at present-day values (at the time of trial) for a reasonable number of years into the future, according to the proof submitted to the jury at trial.

For non-economic losses, plaintiff will seek compensation for emotional distress, psychological injury, embarrassment, and loss of enjoyment of life. The amount of such damages will be determined according to the proof submitted at trial.

Plaintiff will also seek punitive damages in an amount that has a reasonable relationship to the amount of compensatory damages, but is high enough to serve as an example for this employer and other similar large employers to protect against the intentional discrimination that he claims resulted in this case. That determination will be made by the jury in light of the evidence submitted at trial.

Plaintiff's attorneys' fees and costs, including experts, may be awarded if plaintiff prevails in the litigation. The amount of that award will be determined by the Court after judgment. Attorneys' fees awarded should be calculated according to the adjustable lodestar method, which if successful on the California claims should include a substantial (at least 2.0) enhancement for contingent risk. *See Ketchum v. Moses*, 24 Cal.4th 1122 (2001).

Defendant anticipates challenging some and perhaps all of Plaintiff's alleged damages, but until it receives Plaintiff's calculations of same, it is unable to be more specific at this time as to how they will be challenged.

**12.  SETTLEMENT AND ADR**

The parties have not yet attempted to settle this matter. The parties agree to participate in an Early Neutral Evaluation through the Court's ADR program, with the option of transforming the process into a mediation if the circumstances warrant.

**13.  CONSENT TO MAGISTRATE FOR ALL PURPOSES**

Defendant has previously declined to proceed before a magistrate, and continues to so decline.

**14.  OTHER REFERENCES**

Not applicable.

**15.  NARROWING OF THE ISSUES**

At this time, it is unknown whether issues can be narrowed.

**16.  EXPEDITED SCHEDULE**

The parties do not consent to an expedited schedule at this time.

**17. SCHEDULING**

See section 8 above. Plaintiff requests a trial date in December 2008 or January 2009, prior to the three-year anniversary of plaintiff's termination on January 31, 2006. Defendant requests a trial date in February or March 2009.

**18. TRIAL**

Plaintiff has requested a jury trial. The estimated length of trial is five to seven days.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff has no such persons or entities to disclose. Defendant Kaiser Foundation Health Plan, Inc. is part of the Kaiser Permanente healthcare system. Other entities are associated with Defendant in that they are also part of the Kaiser Permanente healthcare system. However, neither the named defendant, nor any of the other associated entities, are publicly-held companies. No entity other than an entity that is part of the Kaiser Permanente healthcare system has any financial interest in the outcome of this litigation.

**20. MATTERS THAT MAY FACILITATE THE DISPOSITION OF THIS MATTER.**

None known at this time.

DATED: November 9, 2007                SEYFARTH SHAW LLP


                                       By_____/s/_____
                                              Jonathan D. Martin

                                       Attorneys for Defendant
                                       KAISER FOUNDATION HEALTH PLAN, INC.

DATED: November 9, 2007                JEREMY L. FRIEDMAN


                                       By_____/s/_____
                                              Jeremy L. Friedman

                                       Attorneys for Plaintiff
                                       FERNANDO DAROSA