# SEYFARTH SHAW LLP
ATTORNEYS

560 Mission Street, Suite 3100
San Francisco, California 94105
(415) 397-2823
fax (415) 397-8549
www.seyfarth.com

Writer's direct phone
(415) 544-1022

Writer's e-mail
amcnaught@seyfarth.com

August 28, 2008

The Honorable Susan Illston
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

> Re: Fernando daRosa v. Kaiser Foundation Health Plan, Inc.
> Case No. C07-3114 SI

Dear Judge Illston:

In connection with the above referenced matter, defendant Kaiser Foundation Health Plan, Inc. ("Defendant" or "Kaiser") submits this letter brief in response to plaintiff Fernando daRosa's ("Plaintiff") letter brief dated August 21, 2008.

## Rule 30(b)(6) Depositions

Defendant concedes that the process of determining and producing witnesses in response to Plaintiff's Rule 30(b)(6) deposition notice has been a more involved process than simply producing witnesses identified by name. Having said that, however, Plaintiff's letter brief is replete with misstatements, omissions, and unsupported accusations regarding the matters at issue.

Plaintiff claims that Defendant has engaged in improper document destruction. This is a very serious allegation (which Defendant denies) for which he provides <u>no competent evidence whatsoever.</u> He does not identify a single specific document that he believes exists or existed but has not been produced, and he offers no evidence that any such document was "destroyed." He cites an earlier case in which sanctions were imposed against Defendant, but conspicuously omits that the other case occurred six years ago and involved different people, different kinds of documents, and different claims. Nor does he offer even one word of explanation as to how the documents that he believes have been "destroyed" are at all relevant to his case. Plaintiff cannot rest on these types of specious allegations which are wholly unsupported by any competent evidence.

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA

SF1 28332584.2



The Honorable Susan Illston
August 28, 2008
Page 2

    Plaintiff's counsel makes a series of incorrect assertions about the circumstances surrounding his deposition notice.[1] First, he claims that even <u>before he had served the notice</u>, he and Defendant's counsel had "agreed that the week of June 23 would be a time when all counsel would be available to conduct" the deposition. Not only is that incorrect, but it does not even make sense; Defendant's counsel could not agree to firm deposition dates prior to receiving the deposition notice describing the deposition subjects. Without the notice describing the requested subject areas of testimony, Defendant could not identify appropriate witnesses and confirm their availability. Further, Defendant's counsel explained to Plaintiff's counsel that the Kaiser representative who had been working on the case was on vacation through the following week, thus making it impossible to fully investigate who would be the appropriate Rule 30(b)(6) deponent(s), which would make the week of June 23 impractical. Then, Plaintiff erroneously claims that Defendant's counsel "suggested" the week of June 30 instead. That did not happen. Defendant's counsel did say that "we can discuss the week of June 30," but under the circumstances that was hardly an indication that counsel was promising to produce witnesses that week, again given that the determination of the appropriate witnesses could not occur immediately.

    Plaintiff also does not provide the Court with all of the relevant facts regarding Defendant's "intention of producing any Rule 30(b)(6) witnesses . . . prior to the discovery cut-off" in the case. Defendant indicated to Plaintiff that given the length of time it was taking to determine and produce these witnesses, Defendant was not only willing to produce the witnesses after the discovery cut-off, but if Plaintiff felt that these witnesses provided new information regarding the individuals previously deposed, Defendant would be willing to discuss with Plaintiff the possibility of producing these individuals again for the limited purpose of being questioned about the new information. Plaintiff conveniently omits this last fact from his letter brief. Defendant realizes that post-cutoff discovery should be avoided. However, under the circumstances, Defendant was attempting to offer a reasonable solution which would avoid any prejudice to Plaintiff. Plaintiff has, unfortunately, rejected Defendant's efforts and has chosen instead to fight about it, thus creating more work and distraction for the parties and the Court.

    Even if Defendant's Rule 30(b)(6) designation might ideally have been quicker, Plaintiff must accept some responsibility for the situation in which he now finds himself. For whatever reason, Plaintiff chose to wait until *less than three months* before the discovery cutoff to issue the subject deposition notice. He issued it, and demanded that it be complied with, during a period when people are often on summer vacation – indeed, that did occur here – and thus would not be available. The complexity of Plaintiff's deposition notice should also have given him some expectation that compliance would not be as simple as he now claims it should have been. Further, the parties participated in Alternative Dispute Resolution (ENE) in this case in early February 2008, and it was unsuccessful. Why Plaintiff waited until *four months* after that to first serve this

---

[1] Attached hereto is a copy of the Rule 30(b)(6) deposition notice in question which was served on or about June 11, 2008. While the Court's standing order does not expressly indicate that exhibits to a discovery letter brief count against the five-page limit or are otherwise not permitted, Defendant apologizes if the Court considers exhibits to count toward the five-page limit. Defendant believes it is important that the Court have the notice available to it in order to properly evaluate the parties' contentions and arguments.

SF1 28332584.2



The Honorable Susan Illston
August 28, 2008
Page 3

deposition notice is unclear. Had he done so earlier, he would likely not have run into the problems he now claims to have.[2]

The deposition notice itself is extremely problematic.[3] It demands that Defendant produce a witness (or, in reality, multiple witnesses) regarding highly technical and detailed matters that are not known by many. Also, Plaintiff has not made a showing that the information he is seeking is relevant to the case. The District of Colorado recently issued a decision that is instructive in this regard. In *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2668301 (D. Col. July 1, 2008), the plaintiff issued a Rule 30(b)(6) deposition notice that sought the deposition of a witness possessing "[k]knowledge concerning the storage, preservation and backup of e-mails relating to claims authored or received by" various claim adjusters who handled plaintiff's claims. Defendants objected that the information sought was irrelevant to whether defendants had breached plaintiff's insurance policy or acted in bad faith while adjusting his claim. Plaintiff claimed that defendants had produced only a small number of e-mails and thus was apparently arguing that he believed defendants had lost e-mails or information relating to his claim. The court ruled that the "storage, preservation and backup of emails" was not relevant to the issue of whether defendants breached plaintiff's insurance policy or acted in bad faith. *Id.* at * 5.

The same reasoning should apply to the present case. Plaintiff has made absolutely no showing that the information he is seeking regarding "search," "preservation" and "production" of documents is relevant to this case. He identifies no specific documents that exist but have not been produced, nor has he shown how the information sought is relevant to the issues in this case (e.g., whether Plaintiff is disabled, whether he was denied leave and/or accommodation, etc.). Rather, he relies solely on speculation that relevant documents must exist that have not been produced.[4] He

---

[2] It is worth noting, as reflected in his comment at page 2 of his letter brief about how "if the depositions were not completed by June, there were *some days in July*" (emphasis added) when they could be done, that Plaintiff's counsel Mr. Friedman is frequently "unavailable" for extended periods of time. On many occasions during this case, Plaintiff's counsel has indicated that he would be "out of town," or working on an "appellate brief," or otherwise occupied in such a way that he was not able to attend to the present case. Plaintiff has had *two* law firms representing him in this case for some time now. That should have eased the burden on Mr. Friedman. Indeed, his claims of unavailability do not always ring true. For example, as he purports to document in his recently filed *ex parte* application, Plaintiff demanded that Defendant put a subpoena "on hold" when he allegedly did not have time to get a motion to quash on file. However, during the two week period after service of the subpoena, when Plaintiff could have filed the motion to quash but claimed he was too busy working on an "appellate brief" in another case and being "out of town," he somehow had the time to serve discovery and file a letter brief in this case.

[3] Defendant served formal written objections to the notice on numerous grounds, including but not limited to lack of relevance.

[4] If Plaintiff felt that a specific document existed but has not been produced, nothing has stopped him from serving a request for production identifying that particular document. He has failed to do so. Instead, as Defendant has previously explained to the Court, Plaintiff has elected to rely on a document request that can fairly be translated as "produce every scrap of paper that relates to Plaintiff."



The Honorable Susan Illston
August 28, 2008
Page 4

must do more than that to be entitled to the type of discovery he seeks with his Rule 30(b)(6) notice. He does not get to delve into these matters simply based on his own overblown purported mistrust of Defendant. While Defendant has been willing to consider compromise regarding this deposition, in fact Plaintiff has not.

**Defendant's Responses to Plaintiff's Requests for Admissions**

Plaintiff has utterly failed to demonstrate entitlement to any relief with respect to Defendant's responses to his requests for admissions. All he claims is that in a few instances, Defendant denied requests that he apparently thinks should have been admitted. He demands that Defendant "meet and confer" with him to "explain" its denials. The Federal Rules impose no such obligation on a responding party. The requesting party may file a motion to determine the sufficiency of an answer to a request for admission (FRCP 36(a)(6)), but here Plaintiff is not challenging whether a response is sufficient; rather, he is claiming that he disagrees with Defendant's responses. Further, if a party denies a request for admission, the requesting party may prove the truth of the matter at trial and seek expenses relating to that proof, depending on the circumstances. FRCP 37(c)(2). The responding party need not "explain" its denials before then, nor may the responding party be compelled to "meet and confer" about them.

Not only is there zero authority supporting Plaintiff's request for relief, but he did not meet and confer in any meaningful way on this topic before seeking relief. The following is the sum total of the parties' communications on the subject, beginning with the pertinent portion of an e-mail from Plaintiff's counsel on August 19, 2008 at 11:20 AM:

> . . . I wish to have a meet and confer with you about plaintiff's requests for admissions. I would be happy to do it before or after the 30(b)(6) depositions that I assume we will be doing this week, on Wednesday or Thursday. I wish to go over each RFA (and there are over 50) and make sure I understand the objections and responses, especially in light of any additional information and records that have been made available to defendant to this point.

Defendant's counsel responded by e-mail on August 19, 2008 at 6:13 PM:

> We are not obligated to "meet and confer" regarding your request for admissions to make sure you "understand" our responses and objections. They speak for themselves. What exactly do you want us to do and what authority obligates us to do it?

Plaintiff's counsel responded as follows on August 19, 2008 at 6:37 PM:

> [Y]ou are obligated to meet and confer over any discovery dispute, prior to me bringing a motion. I want to have that meet and confer, and go over your requests for admissions. If you are refusing to have one, please say so, and I will ask the Court to direct you to do so.

SF1 28332584.2

**SEYFARTH SHAW LLP**
ATTORNEYS

The Honorable Susan Illston
August 28, 2008
Page 5

Defense counsel responded on August 20, 2008 at 6:19 PM:

> Regarding your request for admissions, there is an obligation to meet and confer before a motion is filed regarding a discovery dispute, but you still haven't identified a cognizable "dispute." Rather, you have asked that we discuss every RFA so that you "understand" our responses. I don't see a "dispute" in that. If you disagree with or do not "understand" any of our denials, then you will have the opportunity to refute them at trial. We owe you no obligation to explain our denials to you. If you believe there is a legitimate dispute under the Federal Rules of Civil Procedure, then please identify specifically each request where you believe there's a dispute, and explain what that dispute is. Short of that, you have not properly met and conferred…

The final communication was this e-mail portion from August 20, 2008 at 6:50 PM:

> Re RFAs. You and I disagree about our discovery obligations. I will file a separate letter brief motion on this issue as well.

Plaintiff blatantly failed to identify any authority supporting his position (despite Defendant's request for such authority) and he failed to identify which requests for admissions he felt were in "dispute" (again ignoring Defendant's request for this information). Plaintiff cannot claim that he properly met and conferred on this issue. His intransigence is exacerbated by the fact that there is absolutely no merit to his position in the first place. Plaintiff's counsel should be sanctioned for filing a plainly frivolous motion and failing to adequately meet and confer before doing so.

For all of the above reasons, Defendant requests that Plaintiff's motion be denied.

Sincerely,

SEYFARTH SHAW LLP

Andrew M. McNaught

AMM/dlc

SF1 28332584.2