SEYFARTH SHAW LLP
Dana L. Peterson (SBN 178499) dpeterson@seyfarth.com
Jonathan D. Martin (SBN 188744) jmartin@seyfarth.com
Andrew M. McNaught (SBN 209093) amcnaught@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FERNANDO DAROSA,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. C07-03114 SI<br><br>**DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 31, 2008<br>Time: 9:00 AM<br>Location: Courtroom 10, 19th Floor<br>Judge: The Honorable Susan Illston |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTS .................................................................................................................2

    A.    About Plaintiff and His Understanding of Family and Medical Leave
        Requirements ...............................................................................................2

    B.    Plaintiff's Alleged "Disability"..................................................................2

    C.    Plaintiff's Alleged Request For a Single "Accommodation" ......................3

    D.    Plaintiff Is Counseled Regarding His Poor Attendance..............................3

    E.    Plaintiff Is Put Off Work For More Than 12 Weeks; Plaintiff Is Terminated........4

    F.    Plaintiff Admits He Does Not Know of an Alternate Reason For His
        Termination..................................................................................................6

    G.    Plaintiff Failed To Disclose His Damage Computations .............................6

III.  LEGAL ARGUMENT ..........................................................................................6

    A.    Summary Judgment Standard ......................................................................6

    B.    Defendant Is Entitled to Summary Judgment Because Plaintiff Has Failed
        to Make Required Disclosures Regarding His Alleged Damages .........................7

    C.    Plaintiff's Claims Under the FMLA and CFRA Fail...................................9

        1.    Plaintiff Would Have Been Unable to Return to Work After
            12 Weeks..........................................................................................9

        2.    Plaintiff Did Not Suffer an Adverse Employment Action When
            He Was Terminated .......................................................................10

    D.    Plaintiff Cannot Establish Violations of the ADA and FEHA ...................11

        1.    Plaintiff Cannot Establish That He Suffered From a "Disability"..............12

            a.    Some of the Activities In Which Plaintiff Claims He Was
                Limited Are Not Major Life Activities............................................12

            b.    Plaintiff Has Insufficient Evidence of a "Limitation" or
                "Substantial Limitation" in Anything ...............................................13

        2.    Plaintiff Cannot Establish Causation .............................................13

        3.    Plaintiff Was Not Improperly Denied a Reasonable Accommodation......14

    E.    Plaintiff's Wrongful Termination Claim Fails...........................................15

        1.    Plaintiff Admittedly Lacks Evidence of a "Wrongful" Termination.........16

2.  The Wrongful Termination Claim Is Merely Duplicative of Plaintiff's Statutory Claims.................................................................16

3.  Plaintiff Has No Wrongful Termination Claim Because His Underlying Claims Are Without Merit.............................................16

F.  Plaintiff Is Not Entitled to Punitive Damages..........................................16

IV.  **CONCLUSION** ........................................................................................18

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**FEDERAL CASES**

4

*Ackerman v. Western Elec. Co.*,
  860 F.2d 1514 (9th Cir. 1988) ....................................................................17

5

6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................7

7

8

*Blanton v. Winston Printing Co.*,
  868 F. Supp. 804 (M.D.N.C. 1994) ...........................................................12

9

*Carter v. Bennett*,
  840 F.2d 63 (D.C. Cir. 1988) ....................................................................14

10

11

*Cehrs v. Northeast Ohio Alzheimer's Research Center*,
  155 F.3d 775 (6th Cir. 1998) .......................................................................9

12

13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................6

14

15

*Chenoweth v. Hillsborough County*,
  250 F.3d 1328 (11th Cir. 2001) .................................................................12

16

*Earl v. Mervyns, Inc.*,
  207 F.3d 1361 (11th Cir. 2000) .................................................................14

17

18

*Fraser v. Goodale*,
  342 F.3d 1032 (9th Cir. 2003) ...................................................................13

19

20

*Hodgens v. General Dynamics Corp.*,
  144 F.3d 151 (1st Cir. 1998) .....................................................................10

21

*Hutton v. Elf Atochem North America, Inc.*,
  273 F.3d 884 (9th Cir. 2001) .....................................................................12

22

23

*Kolstad v. American Dental Ass'n*,
  527 U.S. 526 (1999) .............................................................................16, 17

24

25

*Nelson v. Pima Community College*,
  83 F.3d 1075 (9th Cir. 1996) ......................................................................7

26

*Piascyk v. City of New Haven*,
  64 F. Supp. 2d 19 (D. Conn. 1999) ...........................................................12

27

28

iii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

*Reed v. LePage Bakeries, Inc.,*
    244 F.3d 254 (1st Cir. 2001) .................................................................................14

*Sanders v. Arneson Products, Inc.,*
    91 F.3d 1351 (9th Cir. 1996) ................................................................................16

*Stafne v. Unicare Homes,*
    266 F.3d 771 (8th Cir. 2001) ..........................................................................14, 15

*Taylor v. Principal Finance Group, Inc.,*
    93 F.3d 155 (5th Cir. 1996) ..................................................................................14

*US Airways, Inc. v. Barnett,*
    535 U.S. 391 (2002) ..............................................................................................14

*Use Techno Corp. v. Kenko USA, Inc.,*
    2007 U.S. Dist. LEXIS 85916 (N.D. Cal. November 20, 2007)....................7, 8, 9

*Williams v. Toyota Motor Mfg.,*
    224 F.3d 840 (6th Cir. 2000), *rev'd on other grounds,* 534 U.S. 184 (2002)..................10, 11

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) ................................................................................8

*Zukle v. Regents of Univ. of California,*
    166 F.3d 1041 (9th Cir. 1999) ..............................................................................14

**STATE CASES**

*American Airlines v. Sheppard,*
    96 Cal. App. 4th 1017 (2002) ...............................................................................17

*Brundage v. Hahn,*
    57 Cal. App. 4th 228 (1997) .................................................................................12

*Dudley v. Dept. of Transportation,*
    90 Cal. App. 4th 255 (2001) .................................................................................10

*Green v. Ralee Engineering Co.,*
    19 Cal. 4th 66 (1998) ............................................................................................15

*Knights v. Hewlett Packard,*
    230 Cal. App. 3d 775 (1991) ................................................................................13

*Muller v. Automobile Club of So. Cal.,*
    61 Cal. App. 4th 431 (1998) .................................................................................16

iv

*Neisendorf v. Levi Strauss,*
    143 Cal. App. 4th 509 (2006) .................................................................9

*Patrick v. Maryland Casualty Co.,*
    217 Cal. App. 3d 1566 (1990) ..............................................................17

*Shoemaker v. Myers,*
    52 Cal. 3d 1 (1990) ..............................................................................16

*Tameny v. Atlantic Richfield Co.,*
    27 Cal. 3d 167 (1980) ..........................................................................15

*White v. Ultramar, Inc.,*
    21 Cal. 4th 563 (1999) .........................................................................17


**FEDERAL STATUTES**

29 U.S.C. § 2612 .........................................................................................9

29 U.S.C. § 2615 .......................................................................................10

42 U.S.C. § 12102(2)(A) ...........................................................................11

42 U.S.C. § 12112(a) .................................................................................11

42 U.S.C. § 12112(b)(5) ............................................................................14


**STATE STATUTES**

Cal. Civ. Code § 3294(a)-(b) .....................................................................17

Cal. Civ. Code § 3294(c)(1) .......................................................................17

Cal. Civ. Code § 3294(c)(2) .......................................................................17

Cal. Gov't Code § 12926(k)(1)(B) ............................................................12

Cal. Gov't Code § 12926(k)(1)(B)(ii) .......................................................12

Cal. Gov't Code § 12940(a) .......................................................................12

Cal. Gov't Code § 12940(m) ......................................................................14

Cal. Gov't Code § 12945.2 ...........................................................................9

Cal. Gov't Code § 12945.2(l) .....................................................................10

v

1

## FEDERAL RULES

Federal Rules of Civil Procedure 26(a) ................................................................8

Federal Rules of Civil Procedure 26(a)(1) ..........................................................6

Federal Rules of Civil Procedure 26(a)(1)(C) .................................................7, 8

Federal Rules of Civil Procedure 26(e)(1) ..........................................................9

Federal Rules of Civil Procedure 34 ...................................................................7

Federal Rules of Civil Procedure 37(c)(1) ......................................................7, 8

Federal Rules of Civil Procedure 56 ...................................................................1

## FEDERAL REGULATIONS

29 C.F.R. § 825.214(b) .......................................................................................9

29 C.F.R. § 1630.2(i) ........................................................................................11

29 C.F.R. § 1630, Appendix at § 1630.9 ...........................................................14

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1

**NOTICE OF MOTION AND MOTION**

2      NOTICE IS HEREBY GIVEN that on October 31, 2008 at 9:00 AM in Courtroom 10 of

3   this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, defendant

4   KAISER FOUNDATION HEALTH PLAN, INC. ("Defendant" or "KFHP") will and does

5   hereby move the Court for an order under Rule 56 of the Federal Rules of Civil Procedure

6   ("FRCP") granting it summary judgment or, in the alternative, summary adjudication, in its favor

7   and against plaintiff FERNANDO DAROSA ("Plaintiff").

8

**RELIEF SOUGHT**

9      Defendant seeks summary judgment or, in the alternative, summary adjudication, in its

10   favor on all claims for relief by Plaintiff: (1) violation of the Americans With Disabilities Act

11   ("ADA"); (2) violation of the California Fair Employment and Housing Act ("FEHA"); (3)

12   violation of public policy – wrongful termination; (4) denial of medical leave rights under the

13   Family and Medical Leave Act ("FMLA"); and (5) denial of medical leave rights under the

14   California Family Rights Act ("CFRA").

15      This Motion will be based on this Notice of Motion and Motion, the accompanying

16   Memorandum of Points and Authorities, the accompanying Declaration of Jonathan D. Martin,

17   the pleadings and files in this matter, and such additional evidence or argument as may be

18   presented at the hearing.

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

20   **I.      INTRODUCTION**

21      Defendant is entitled to summary judgment, or in the alternative summary adjudication,

22   in its favor because Plaintiff can point to no triable issues of fact in connection with any of his

23   claims.  He has no evidence to support the proposition that he had a disability that limited a

24   major life activity, or that he made a request for a reasonable accommodation.  He claims he was

25   totally unable to work for longer than the statutory 12-week period required by the FMLA and

26   CFRA, and therefore he cannot assert a violation of either statute.  He concedes that he does not

27   know the reason for his termination other than that indicated in his termination letter: failure to

28   report to work or call in for several days in a row.  This admission negates his wrongful

1

1  termination claim and further establishes that he cannot assert an adverse employment action in

2  support of his other claims.  In addition, Plaintiff has violated the FRCP by failing to provide

3  damage computations in his Initial Disclosures or at any other time.  For all of these reasons, this

4  motion should be granted.

5  **II.    FACTS[1]**

6  **A.    About Plaintiff and His Understanding of Family and Medical**
   **Leave Requirements**

7

8       Beginning in the early 2000's, Plaintiff was employed with Defendant as a member

9  services representative.  Deposition of Plaintiff Fernando daRosa ("Pl. Dep.") 33:20-25; 34:1-3.[2]

10  He later became a supervisor in the pharmacy department.  Pl. Dep. 34:7-13.  He eventually

11  resigned from this position, and Defendant rehired him as a member services representative.  Pl.

12  Dep. 34:17-22; 37:20-25; 38:1-17.  In that capacity, he would assist members in resolving issues

13  they had in connection with the health care they received from Defendant.  Pl. Dep. 38:5-17;

14  39:16-25; 40:1-10.  During his employment with Defendant, he knew that Defendant had a

15  procedure for obtaining family and medical leave, and he was familiar with that procedure.  Pl.

16  Dep. 43:9-22; 47:6-10, 18-25; 48:1-18; Exh. 2 (Martin Decl., Exh. B).  That procedure required

17  that an employee wishing to take family and medical leave due to a serious medical condition

18  provide medical certification to support the request.  Pl. Dep. Exh. 2 (Martin Decl., Exh. B).

19  **B.    Plaintiff's Alleged "Disability"**

20       Plaintiff claims to suffer from narcolepsy.  Pl. Dep. 48:19-25.  Narcolepsy is the only

21  disability, illness, medical condition or medical issue he is asserting in this lawsuit.  Pl. Dep.

22  50:12-23.  Plaintiff was never criticized or counseled for falling asleep at work.  Pl. Dep. 88:18-

23  20.

24       Plaintiff asserts that his narcolepsy limited him in the following life activities: (1)

25  watching television with his children (Pl. Dep. 110:20-25; 111:1); (2) communicating with others

26  (Pl. Dep. 111:8-11); (3) going out/socializing (Pl. Dep. 112:15-25; 113:1-5); and (4) working (Pl.

27  _____

[1]      Defendant assumes the truth of these facts solely for the purposes of this motion.

28  [2]      Plaintiff's deposition testimony is attached to the accompanying Declaration of Jonathan
D. Martin ("Martin Decl.") as Exhibit A.

2

1    Dep. 113:15-17). Plaintiff cannot identify any further life activities that his narcolepsy limited.

2    Pl. Dep. 113:21-25; 116:10-14. Plaintiff cannot identify how often his narcolepsy limited his

3    ability to communicate with others. Pl. Dep. 111:12-15. He does not know how often he has

4    been limited in his ability to go out because of his narcolepsy. Pl. Dep. 113:10-14. He cannot

5    say how often he has been limited in working due to his narcolepsy. Pl. Dep. 113:15-20. He is

6    unable to state when or how often his narcolepsy affected his ability to perform his job with

7    Defendant. Pl. Dep. 116:25; 117:1-7; 118:25; 119:1-3. He is unable to state how often he had

8    "sleep attacks" at work. Pl. Dep. 119:25; 120:1-7. He does not know how many times he missed

9    work due to his narcolepsy. Pl. Dep. 139:13-20.

10    **C.    Plaintiff's Alleged Request For a Single "Accommodation"**

11    The only individual with Defendant from whom Plaintiff ever allegedly requested an

12    accommodation for his alleged disability was his supervisor Margie Roper. Pl. Dep. 39:10-15;

13    127:7-13. The only accommodation Plaintiff ever claims to have requested from Roper was that

14    the temperature in the office be lowered. Pl. Dep. 128:22-25; 129:1-5. Plaintiff cannot identify

15    how much lower he wanted the temperature to be adjusted, and did not tell Roper how much

16    lower he wanted the temperature. Pl. Dep. 132:4-11; 133:4-8. He does not know what the

17    temperature was in the office. Pl. Dep. 132:25; 133:1-3. He does not know what temperature

18    level would have helped him. Pl. Dep. 133:4-13. He cannot identify a source of any information

19    dictating that lowering the temperature might have helped him with his sleep issues. Pl. Dep.

20    133:14-21.

21    **D.    Plaintiff Is Counseled Regarding His Poor Attendance**

22    On December 7, 2005, Plaintiff met with Roper regarding his work attendance, and she

23    gave him a memorandum listing dates he had missed parts of or entire days of work. Pl. Dep.

24    167:11-25; 168:1-20; Exh. 5 (Martin Decl., Exh. C). He signed the memorandum in Roper's

25    presence, after reading it. Pl. Dep. 168:8-12; 170:1-3, 10-12. He does not remember telling

26    Roper that anything in the document was incorrect or inappropriate. Pl. Dep. 170:13-20. Roper

27    told him that he had too many absences and he needed to improve. Pl. Dep. 163:12-16.

28

For several absences listed in the memorandum, Plaintiff cannot remember why he was absent or whether he submitted any paperwork to Defendant regarding the absence. Pl. Dep. 177:1-25; 178:1-25; 179:1-2. On one occasion listed in the memorandum, December 6, 2005, he left work at 12:30 and did not return, calling Roper to advise her that he was "ill" and was going to rest in his car, and then later telling Roper he was still ill and was going home. Pl. Dep. 179:3-10. He does not remember why he left work early that day and does not recall saying more to Roper than what was reflected in the memorandum. Pl. Dep. 179:11-17. He does not remember mentioning narcolepsy or any sleep-related disorder during the conversation. Pl. Dep. 180:4-8.

On another occasion listed in the December 7, 2005 memorandum, he called in to work at approximately noon and indicated he was coming to work. He arrived at approximately 1:00. Pl. Dep. 180:9-15. He does not remember mentioning narcolepsy or any sleep-related disorder when he called in on this occasion. Pl. Dep. 181:5-8.

**E.      Plaintiff Is Put Off Work For More Than 12 Weeks; Plaintiff Is Terminated**

On January 24, 2006, Plaintiff met with his neurologist Dr. Frank Dustin, with whom he had been consulting regarding his narcolepsy. Pl. Dep. 54:16-23; 190:14-16. Plaintiff reported to him that he was having a hard time staying awake. Pl. Dep. 191:25; 192:1-3. Dr. Dustin put Plaintiff off work from January 25, 2006 to March 25, 2006 by way of a "Visit Verification" form. Deposition of Dr. Frank Dustin ("Dustin Dep.")[3] 76:16-21; 77:1-11; 78:17-20; Exh. 7 (Martin Decl,, Exh. E); Pl. Dep. Exh. 8 (Martin Decl., Exh. F). This form did not indicate anything about the condition giving rise to Plaintiff's alleged need for leave, and did not indicate he had a "serious health condition" (even though the form had check-boxes easily allowing for such an indication). Pl. Dep. Exh. 8 (Martin Decl., Exh. F). Dr. Dustin put him off work solely to "adjust his medications" and intended that Plaintiff not drive during this period. Dustin Dep. 80:6-21.

---

[3]      Dr. Dustin's deposition testimony is attached to the accompanying Declaration of Jonathan D. Martin as Exhibit D.

4

1          The Visit Verification form was purportedly faxed by Plaintiff's girlfriend Anastacia

2    Freitas on January 25, 2006 to the fax machine of the Member Services department where

3    Plaintiff worked. Pl. Dep. 11:1-5; 211:15-24; Exh. 8 (Martin Decl., Exh. F); Deposition of

4    Anastacia Freitas ("Freitas Dep."),[4] 64:20-25; 65:1-1-4; 68:22-25; 69:1; 74:5-7; Exh. 3 (Martin

5    Decl., Exh. H). This fax machine would receive member complaints, grievances and other

6    documents related to Defendant's health plans, and as such was a heavily used machine. Pl.

7    Dep. 156:10-21. Freitas did not fax a cover sheet with the Visit Verification form, nor did she

8    include anywhere on the form any indication as to whom the document was intended for. Freitas

9    Dep. 69:11-16. When Plaintiff asked her to fax the document, he did not tell her the name of any

10   particular person to whom the document should be faxed. Freitas Dep. 69:20-23. The document

11   contains no indication that it was intended for Roper. Pl. Dep. 222:9-12; Exh. 8 (Martin Decl.,

12   Exh. F). Neither Plaintiff nor Freitas has a reason why they did not include any indication as to

13   the intended recipient of the fax. Freitas Dep. 73:1-9; Pl. Dep. 216:16-24.

14          Plaintiff was subsequently terminated from his employment with Defendant. Pl. Dep.

15   226:9-11. He received a termination letter dated January 31, 2006. Pl. Dep. 228:20-25; 229:1-

16   12; Exh. 9 (Martin Decl., Exh. I). The letter indicated that had been a "no call, no show" on

17   January 25, 26, 27, 30 and 31, 2006, and that he had been considered to have abandoned his job.

18   *Id.* Roper confirms that this was the reason for his termination. Deposition of Margie Roper

19   ("Roper Dep.")[5] 78:21-25; 79:1-7.

20          On March 24, 2006, Dr. Dustin extended Plaintiff's time off work from March 25, 2006

21   to April 25, 2006. Dustin Dep. 91:1-13, 18-22; Exh. 9 (Martin Decl., Exh. K). Again, Dr.

22   Dustin did not indicate anything about the condition giving rise to Plaintiff's alleged need for

23   further leave, did not indicate he had a "serious health condition," and did not state when he

24   would be able to return to full work duties with no restrictions. *Id.* In fact, Plaintiff cannot recall

25   ///

26

27   _____
     [4]     Freitas' deposition testimony is attached to the accompanying Declaration of Jonathan D.
     Martin as Exhibit G.
28   [5]     Roper's deposition testimony is attached to the accompanying Declaration of Jonathan D.
     Martin as Exhibit J.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1    exactly when he was cleared to return to work, indicating only that it was "sometime in 2006."

2    Pl. Dep. 291:20-25; 292:9-14; 293:8-13.

3       The only leave that Plaintiff is claiming in this lawsuit he was denied is the leave that Dr.

4    Dustin purportedly put him on effective January 25, 2006.  Pl. Dep. 275:21-25; 276:1-5.

5       **F.**     **Plaintiff Admits He Does Not Know of an Alternate Reason**

6             **For His Termination**

7       Plaintiff does not know if he was terminated as some kind of punishment for requesting

8    leave.  Pl. Dep. 277:13-16.  He does not know if he was terminated as punishment for being

9    disabled.  Pl. Dep. 277:17-19.  He does not know if Defendant terminated him as punishment for

10    seeking an accommodation for a disability.  Pl. Dep. 277:20-23.  He believes there is "another

11    reason" for his termination other than what his termination letter stated, but he does not know

12    what that alleged other reason is.  Pl. Dep. 278:16-24.

13       **G.**     **Plaintiff Failed To Disclose His Damage Computations**

14       In November 2007, Defendant received Plaintiff's Initial Disclosures pursuant to FRCP

15    26(a)(1).  Martin Decl., ¶ 13 & Exh. L.  Under the heading "Computation of Damages," Plaintiff

16    stated that he was seeking "compensatory and punitive damages, as well as an award of

17    attorneys' fees," but that "[a]t this early stage in the litigation, without discovery and the

18    opportunity to develop any expert analysis, plaintiff is unable to provide specific calculations as

19    to the amounts." *Id.* at 3:1-5.  Plaintiff then went on to make generic, boilerplate statements

20    about "economic losses," "lost wages," "front pay" and "non-economic losses" without any

21    actual computations of such alleged damages. *Id.* at 3:6-20.  Defendant has not received any

22    amendment, update or supplementation of Plaintiff's Initial Disclosures.  Martin Decl., ¶ 13.

23   **III.**    **LEGAL ARGUMENT**

24       **A.**     **Summary Judgment Standard**

25       A motion for summary judgment/adjudication will be granted against a party who "fails

26    to make a showing sufficient to establish the existence of an element essential to that party's

27    case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

28    477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence is not enough to create

1   triable issues of fact; there must be sufficiently probative evidence on which a jury could

2   reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-

3   50, 252 (1986). The non-moving party must set forth <u>specific facts</u> showing that there is a

4   genuine issue for trial. *Id.* at 256. Conclusory, speculative testimony is insufficient to create

5   triable issues of fact and defeat summary judgment. *Nelson v. Pima Community College*, 83

6   F.3d 1075, 1081-82 (9th Cir. 1996).

7       For the reasons stated below, Plaintiff cannot establish specific facts that show there are

8   any genuine issues of fact that must be tried. Accordingly, the Court should grant summary

9   judgment, or in the alternative summary adjudication, to Defendant.

10      **B.    Defendant Is Entitled to Summary Judgment Because Plaintiff
            Has Failed to Make Required Disclosures Regarding His
11           Alleged Damages**

12      Federal Rule of Civil Procedure 26(a)(1)(C) requires that a party provide Initial

13  Disclosures that include the following information:

14          [A] computation of any category of damages claimed by the
            disclosing party, making available for inspection and copying as
15          under Rule 34 the documents or other evidentiary material, not
            privileged or protected from disclosure, on which such
16          computation is based, including materials bearing on the nature
            and extent of injuries suffered . . .
17

18  FRCP 37(c)(1) states in pertinent part as follows:

19          A party that without substantial justification fails to disclose
            information required by Rule 26(a) . . . is not, unless such failure is
20          harmless, permitted to use as evidence at a trial, at a hearing, or on
            a motion any witness or information not so disclosed.

21      Here, Plaintiff has utterly failed to provide the damage computations required by Rule

22  26(a)(1)(C). Rather, he put trite generalities in his Initial Disclosures, with no computations at

23  all, asserting that he was "unable" to provide the required computations until he conducted

24  further "discovery" and "develop[ed] . . . expert analysis." This is a blatant abuse of the

25  discovery process and the Federal Rules mandate strict penalties for such conduct. Indeed, while

26  Plaintiff may complain that dismissal of his case is a harsh penalty, courts have confirmed that

27  such a penalty is contemplated by the Federal Rules for failure to disclose information required

28  to be disclosed by FRCP 26(a). *Use Techno Corp. v. Kenko USA, Inc.*, 2007 U.S. Dist. LEXIS

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

85916, *7-11 (N.D. Cal. November 20, 2007) (granting defendants' motion for summary judgment due to plaintiffs' failure to disclose computation of damages as required by FRCP 26(a)(1)(c));[6] *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-1107 (9th Cir. 2001) (excluding defense expert whose report was produced untimely, even though such exclusion would make it extremely difficult or perhaps even impossible for defendant to rebut plaintiff's expert on damages; noting approvingly that "[c]ourts have upheld the use of the [Rule 37(c)(1) exclusionary] sanction even when a litigant's entire cause of action or defense has been precluded").

Plaintiff's failure to disclose the required information regarding damages is neither "harmless" nor is there "substantial justification" for such failure. Only Plaintiff can state what his damages are, and by inexcusably failing to provide damage computations as required by the Federal Rules, Plaintiff has severely prejudiced Defendant's ability to prepare for trial. Defendant cannot be expected to rebut or defend against Plaintiff's claims for damages if Defendant does not even know what Plaintiff's alleged damages are and how he arrived at this determination. That is why plaintiffs are required to disclose their computations early in the case via the Initial Disclosure process. Plaintiff here has willfully and deliberately failed to do this, and by so failing has prevented Defendant from preparing a full defense.

Plaintiff cannot escape his disclosure obligations by claiming that he needs more "discovery" or "expert analysis." FRCP 26(a) states that "[a] party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case . . . " There is nothing in the rule that allows a party to delay its disclosure of damage computations until it has retained an "expert" to assist with such computations.[7] Given that Plaintiff has been fully

---

[6] In *Use Techno Corp.*, the plaintiffs argued that (1) they did not disclose their damage computation because defendants failed to produce documents relating to damages until after the deadline for providing the computation; (2) the failure to provide the computation was harmless because the defendants were in possession of the documents that would show the damages; and (3) defendants should have simply called plaintiffs' counsel to ask about the computation. The court rejected all of these arguments.

[7] In the present case, the Court set a deadline of November 10, 2008 for the disclosure of non-medical experts, while the cutoff for non-expert discovery was August 29, 2008 (see Docket #18). This means that by the time Plaintiff discloses an economic/damages expert – if he

8

1   aware of key information regarding his damages (e.g., his compensation with Defendant and

2   subsequent employers) since before he filed suit, he could have provided a computation of

3   damages when he was required to and then supplemented that calculation if and when he

4   obtained additional information, pursuant to FRCP 26(e)(1) (requiring a party to supplement its

5   disclosures when additional responsive information is obtained that renders disclosures

6   incomplete).  He has never done so.

7           Because Plaintiff will be precluded from presenting any evidence at trial regarding

8   damages, he cannot possibly recover any sums from Defendant, and therefore there is no need to

9   proceed any further with this case, as there are no triable issues as to damages.  This lawsuit must

10  be dismissed.

11          **C.      Plaintiff's Claims Under the FMLA and CFRA Fail**

12                  **1.      Plaintiff Would Have Been Unable to Return to Work
                              After 12 Weeks**

13

14          The FMLA and CFRA provide similar protections for employees.  Under both statutes,

15  qualifying employees may take up to 12 weeks of leave (which may be unpaid) for a serious

16  health condition, and they are guaranteed reinstatement after exercising their leave rights.  29

17  U.S.C. § 2612; Cal. Gov't Code § 12945.2.  However, an employee has no right to reinstatement

18  if he is unable to return to work at the conclusion of the 12-week period of statutory leave.  29

19  C.F.R. § 825.214(b); *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-

20  85 (6th Cir. 1998) (finding no FMLA violation because evidence was undisputed that employee

21  would not have been able to return to work at end of 12-week leave period); *Neisendorf v. Levi*

22  *Strauss*, 143 Cal. App. 4th 509, 517-518 (2006) (confirming no violation of CFRA when

23  employee unable to return to work after 12 weeks).[8]

---

24  discloses one at all – the time for Defendant to conduct fact discovery that may relate to damage
    issues that arise from such an expert will have long passed.  The Initial Disclosure rules are
25  designed to prevent that result.  Plaintiff did not follow those rules and Defendant has suffered
    harm as a result.  *See Use Techno Corp.*, 2007 U.S. Dist. LEXIS 85916 at *10 ("[w]ithout this
26  information from Plaintiffs, Defendants had no opportunity to evaluate the actual damages
    claimed by Plaintiffs").
27  [8]      Given the similarity between the FMLA and CFRA, California courts interpreting the
    CFRA may turn to federal decisions regarding the FMLA for guidance.  *Neisendorf*, 143 Cal.
28  App 4th at 514 n.1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

In the present case, it is undisputed that even if Plaintiff had not been terminated when he was, he would have been unable to return to work at the expiration of 12 weeks of leave. His doctor put him on leave starting January 25, 2006 and continuing until March 25, 2006. Before the expiration of that period, the doctor extended Plaintiff's leave to April 25, 2006. This means that Plaintiff's leave was <u>at least</u>[9] 91 days, whereas a 12-week period consists of 84 days. Because Plaintiff would not have returned to work for Defendant at the end of the statutory 12-week leave period, he has no claim under the FMLA or CFRA that he was improperly denied leave or reinstatement.

### 2. Plaintiff Did Not Suffer an Adverse Employment Action When He Was Terminated

To the extent that Plaintiff is claiming that his termination constituted discrimination or retaliation for seeking or taking protected leave, that claim fails as well. Both the FMLA and CFRA prohibit employers from taking discriminatory or retaliatory adverse actions against employees who exercise their rights under these statutes. 29 U.S.C. § 2615; Cal. Gov't Code § 12945.2(l). The elements of such a claim are the following: (1) plaintiff availed himself of a protected right under the FMLA/CFRA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998); *Dudley v. Dept. of Transportation*, 90 Cal. App. 4th 255, 261 (2001).

Plaintiff cannot establish the second or third elements of this claim. He is alleging that he was terminated in response to his request for leave. Normally, a termination would be considered an adverse employment action for the purposes of a discrimination or retaliation claim. However, in this case, Plaintiff would have been subject to termination *in any event* because he would have been unable to return to work after 12 weeks. Therefore, even assuming *arguendo* that his termination had any relation to the fact that he allegedly requested leave (which it did not), it is moot because Defendant was entitled to terminate him anyway. *Williams*

---

[9]   There is no evidence in the record that Plaintiff was cleared to return to work as of April 26, 2006. Plaintiff testifies only that he was cleared "sometime in 2006."

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1    *v. Toyota Motor Mfg.*, 224 F.3d 840, 845 (6th Cir. 2000), *rev'd on other grounds,* 534 U.S. 184

2  (2002) (concluding that plaintiff suffered no harm when she was terminated because she was

3  unable to resume her duties by the end of the FMLA period; "[e]ven if [plaintiff] was wrongfully

4  terminated . . . within the 12-week period covered by the FMLA, she has failed to direct this

5  court to any specific evidence" showing that she could have returned to work at the end of the 12

6  weeks; no damages suffered as a result of termination, and dismissal of FMLA claim upheld).

7  Because Plaintiff suffered no harm, he cannot establish an adverse employment action, and his

8  claim fails.

9       Moreover, Plaintiff has conceded that he does not know why he was terminated.  He

10  testified that he thinks there was some other reason for his termination aside from that stated in

11  his termination letter, but he cannot articulate what that reason is.  As such, he has no evidence

12  of a causal connection between his request for leave and his termination.  All he has is

13  speculation and the allegations in his complaint, which is not evidence and cannot defeat

14  summary judgment.  Without competent evidence, his claim must be dismissed.

15      **D.**    **Plaintiff Cannot Establish Violations of the ADA and FEHA**

16       Under the ADA, it is unlawful to "discriminate against a qualified individual with a

17  disability because of the disability of such individual . . . "  42 U.S.C. § 12112(a).  A disability is

18  a "physical or mental impairment that substantially limits one or more of the major life activities

19  of such individual."  42 U.S.C. § 12102(2)(A).  A major life activity is an activity that is of

20  "central importance to daily life" such as caring for oneself, performing manual tasks, walking,

21  seeing, hearing, speaking, breathing, learning, and working.  *Toyota Motor Mfg., Ky., Inc. v.*

22  *Williams*, 534 U.S. 184, 197 (2002); 29 C.F.R. § 1630.2(i).  A substantial limitation means the

23  employee is "[u]nable to perform a major life activity that the average person in the general

24  population can perform" or "[s]ignificantly restricted as to the condition, manner or duration

25  under which an individual can perform a major life activity as compared to the condition, manner

26  or duration under which the average person can perform that same major life activity."  *Toyota*

27  *Motor Mfg.*, 534 U.S. at 195-96.

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1    FEHA is similar in its protections of disabled workers.  Cal. Gov't Code § 12940(a).  It

2    differs in some respects from the ADA.  Particularly, a disability under FEHA is a condition that

3    "limits a major life activity."  Cal. Gov't Code § 12926(k)(1)(B).  A condition "limits" a major

4    life activity if it makes the achievement of the activity "difficult."  Cal. Gov't Code §

5    12926(k)(1)(B)(ii).

6        A plaintiff can establish a prima facie case of disability discrimination under the ADA

7    and FEHA by proving that (1) he suffers from a disability; (2) he is a qualified individual; and

8    (3) he was subjected to an adverse employment action because of the disability.  *Hutton v. Elf*

9    *Atochem North America, Inc.*, 273 F.3d 884, 891-92 (9th Cir. 2001); *Brundage v. Hahn*, 57 Cal.

10   App. 4th 228, 236 (1997).[10]

11       For the reasons explained below, Plaintiff does not have viable claims under either the

12   ADA or FEHA.

13       **1.    Plaintiff Cannot Establish That He Suffered From a
                 "Disability"**

14

15       **a.    Some of the Activities In Which Plaintiff Claims
                 He Was Limited Are Not Major Life Activities**

16   Plaintiff asserts that among the life activities he was limited in due to his narcolepsy were

17   watching television and socializing.  Such activities are not "major life activities" pursuant to the

18   definition provided above.  They cannot reasonably be considered to be equivalent to "caring for

19   oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

20   working" in terms of their "central importance to daily life."  *Cf. Chenoweth v. Hillsborough*

21   *County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001) (driving a car not a major life activity; being

22   unable to do so "cannot be sensibly compared to inability to see or to learn"); *Piascyk v. City of*

23   *New Haven*, 64 F. Supp. 2d 19, 26-27 (D. Conn. 1999) (running and jumping not major life

24   activities); *Blanton v. Winston Printing Co.*, 868 F. Supp. 804, 807 (M.D.N.C. 1994) (inability to

25   run briskly not a disability).

26

27

28

---

[10]     Because the FEHA provisions relating to disability discrimination are based on the ADA
and other federal law (with some differences), decisions interpreting federal antidiscrimination
laws are relevant in interpreting FEHA's similar provisions.  *Brundage*, 57 Cal. App. 4th at 235.

12

1

                **b.**    **Plaintiff Has Insufficient Evidence of a "Limitation" or "Substantial Limitation" in Anything**

2

3        Plaintiff's deposition testimony regarding the extent of any limitations on major life

4 activities is wholly insufficient to establish any kind of limitation, much less a substantial one.

5 He admittedly (1) cannot identify how often his narcolepsy limited his ability to communicate

6 with others; (2) cannot identify how often he has been limited in his ability to go out because of

7 his narcolepsy; (3) cannot identify how often he has been limited in working due to his

8 narcolepsy; (4) cannot identify how often his narcolepsy affected his ability to perform his job

9 with Defendant; (5) cannot identify how often he had "sleep attacks" at work; (6) cannot identify

10 how often he missed work due to his narcolepsy.  Without such information, Plaintiff cannot

11 possibly establish the extent of any "limitation" on any of these activities.  As such, he cannot

12 satisfy his burden to show that he has a protected "disability." *Fraser v. Goodale*, 342 F.3d

13 1032, 1043-44 (9th Cir. 2003) (plaintiff failed to demonstrate she was substantially limited in

14 caring for herself because she did not indicate that such limitation occurred often enough to rise

15 to level of substantial limitation).

16            **2.**    **Plaintiff Cannot Establish Causation**

17        As discussed above, Plaintiff admits that he does not know of a reason for his termination

18 other than that stated in his termination letter, i.e., that he was absent from work for several days

19 without calling in.[11]  With this admission, he shows that he cannot establish that he was

20 terminated because of his disability or any aspect of it.  Indeed, he expressly conceded that he

21 did not know if he was terminated because of his disability or because he requested an

22 accommodation.  This concession prevents him from proving one of the elements required for a

23 disability discrimination claim.

24 ///

25 ///

26 ///

27

---

28  [11]    As a matter of law, poor attendance constitutes good cause for termination. *Knights v. Hewlett Packard*, 230 Cal. App. 3d 775, 781 (1991).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1    **3.    Plaintiff Was Not Improperly Denied a Reasonable Accommodation**

2

3        The ADA and FEHA require employers to provide, or at least attempt to provide,

4    reasonable accommodation to qualifying disabled employees.  42 U.S.C. § 12112(b)(5); Cal.

5    Gov't Code § 12940(m).  The burden is on the employee-plaintiff to prove that (1) a particular

6    accommodation would allow him to perform the essential functions of the job; (2) the requested

7    accommodation is reasonable; and (3) a reasonable accommodation exists.  *US Airways, Inc. v.*

8    *Barnett*, 535 U.S. 391, 400 (2002); *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1046

9    (9th Cir. 1999) ("when the plaintiff alleges a failure to accommodate, part of the plaintiff's initial

10   burden includes 'showing the existence of a reasonable accommodation' (citation omitted)); *Earl*

11   *v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Reed v. LePage Bakeries, Inc.*, 244 F.3d

12   254, 259 (1st Cir. 2001) ("the plaintiff must show that [her proposed accommodation] would

13   effectively enable her to perform her job"); *Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir.

14   2001) ("it is the plaintiff's burden in this kind of case to prove that there was an accommodation

15   that would have allowed him or her to perform the essential functions of his or her job"); *Carter*

16   *v. Bennett*, 840 F.2d 63, 68 (D.C. Cir. 1988) (holding that plaintiff failed to show that "the

17   additional accommodations he requested . . . were necessary for adequate performance of his

18   job").

19       It is also the plaintiff's responsibility to make a "sufficiently direct and specific" request

20   for an accommodation.  *Reed*, 244 F.3d at 260-61; *Taylor v. Principal Finance Group, Inc.*, 93

21   F.3d 155, 165 (5th Cir. 1996) ("it is the responsibility of the individual with a disability to inform

22   the employer that an accommodation is needed"); 29 C.F.R. § 1630, Appendix at § 1630.9

23   (same).

24       In the present case, Plaintiff cannot satisfy his burden.  He claims to have requested only

25   one "accommodation": the lowering of the temperature in the office.  This request fails to

26   support his claims for several reasons.  First, it is nowhere near "sufficiently direct and specific."

27   Plaintiff admits that he does not know how much lower he wanted the temperature to be, and that

28   he did not tell his supervisor Margie Roper (the only individual with Defendant to whom he

14

1   claims he directed any request for an "accommodation") how much lower a temperature he was

2   seeking.  As such, the request was in no way "direct" or "specific."

3        That problem leads to an additional deficiency in Plaintiff's claim: without any indication

4   as to how much lower he wanted the temperature, he cannot possibly satisfy his burden to

5   establish that such an accommodation would have been reasonable.  What if he needed the

6   temperature to be, for example, at least 15 degrees cooler?  Such an adjustment would likely be

7   unreasonable, for possible reasons such as cost or discomfort to other employees.

8        Further, Plaintiff has no evidence that lowering the temperature would actually have

9   "effectively enabled him to perform his job."  He concedes that he cannot identify any source of

10   information that would suggest that lowering the temperature would have helped him with his

11   sleep issues.  As such, he cannot meet this aspect of his burden.  *See, e.g., Stafne*, 266 F.3d at

12   774-75 (holding that the one accommodation requested by plaintiff, the use of a motorized cart,

13   was not reasonable because there was no evidence that it would have allowed her to perform the

14   essential functions of her job, which included pushing people in wheelchairs).

15        Because Plaintiff is unable to show that he requested a reasonable accommodation that

16   would have allowed him to perform his job, his ADA and FEHA claims must be dismissed.

17        **E.    Plaintiff's Wrongful Termination Claim Fails**

18        Plaintiff alleges that he was wrongfully terminated in violation of public policy.  An

19   employee may bring a tort action for wrongful termination only if his employer discharges him

20   for a reason that violates a fundamental public policy.  *Tameny v. Atlantic Richfield Co.*, 27 Cal.

21   3d 167, 170 (1980).  A tort for wrongful termination in violation of public policy exists in cases

22   where the employee was terminated for (1) refusing to violate a statute; (2) performing a

23   statutory obligation; (3) exercising a constitutional or statutory right; or (4) reporting a statutory

24   violation for the public's benefit.  *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 75-76 (1998).

25   Plaintiff's claim for wrongful termination in violation of public policy is without merit.

26   ///

27   ///

28   ///

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – CASE NO. C07-03114 SI

1.     **Plaintiff Admittedly Lacks Evidence of a "Wrongful"
Termination**

As explained above, Plaintiff readily admits that he does not know any reason for his termination except for what was stated in his termination letter. He has thus conceded that he has no evidence that his termination was "wrongful." Consequently, his claim for wrongful termination must fail.

2.     **The Wrongful Termination Claim Is Merely
Duplicative of Plaintiff's Statutory Claims**

Plaintiff asserts as part of his claims under state and federal statutes that he was wrongfully terminated. Therefore, his separate tort claim for wrongful termination simply duplicates his statutory claims, and should be dismissed on that basis. *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) (wrongful termination claim dismissed because it merely duplicated other claims based on the termination).

3.     **Plaintiff Has No Wrongful Termination Claim Because
His Underlying Claims Are Without Merit**

Defendant has demonstrated above that Plaintiff cannot establish any violations of the ADA, FEHA, FMLA or CFRA. Because those claims fail, his derivative wrongful termination claim fails as well. *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (public policy claim brought concurrently with ADA claim cannot exist "against employers who have not violated the law"); *Muller v. Automobile Club of So. Cal.*, 61 Cal. App. 4th 431, 450-51 (1998) (tort claim for wrongful discharge dismissed due to lack of merit on underlying FEHA claim).

F.     **Plaintiff Is Not Entitled to Punitive Damages**

To establish liability for punitive damages under federal law, Plaintiff must establish by a preponderance of the evidence that Defendant acted with malice or reckless indifference to his right to be free of discrimination. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999). Under California law, Plaintiff must meet an even higher standard to obtain punitive damages: he must demonstrate by *clear and convincing evidence* that a managing agent of

16

1    Defendant engaged in malicious, fraudulent, or oppressive conduct.  Cal. Civ. Code § 3294(a)-

2    (b); *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566 n.1 (1999). "Malice" is defined in section

3    3294(c)(1) as "conduct which is intended by the defendant to cause injury to the plaintiff or

4    despicable conduct which is carried on by the defendant with a willful and conscious disregard

5    of the rights or safety of others."  "Oppression" is defined in section 3294(c)(2) as "despicable

6    conduct that subjects a person to cruel and unjust hardship in conscious disregard of that

7    person's rights."  "Despicable" means conduct that is "so vile, base, contemptible, miserable,

8    wretched or loathsome that it would be looked down upon and despised by ordinary decent

9    people."  *American Airlines v. Sheppard*, 96 Cal. App. 4th 1017, 1050 (2002).

10       Mere tortious conduct does not rise to the level of malice or oppression necessary to

11   support an award of punitive damages.  *Patrick v. Maryland Casualty Co.*, 217 Cal. App. 3d

12   1566, 1575 (1990); *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1520-21 (9th Cir. 1988)

13   (discriminatory conduct that was "unfounded, misguided and extremely ill-advised" was

14   nonetheless insufficient for punitive damages).  Although *Kolstad* holds that conduct need not be

15   egregious to support an award of punitive damages (*Kolstad*, 527 U.S. at 538), punitive damages

16   are authorized in only a subset of cases involving intentional discrimination.  *Id.* at 534.  As the

17   United States Supreme Court observed in *Kolstad*, Congress plainly sought to impose two

18   standards of liability: one for establishing a right to compensatory damages and another, higher

19   standard that a plaintiff must satisfy to qualify for a punitive damages award.  *Id.*  Accordingly,

20   under *Kolstad*, as under state law, the mere fact of intentional discrimination does not necessarily

21   entitle a plaintiff to punitive damages.  Rather, the intentional discrimination must have been

22   perpetrated with malice or reckless indifference.  *Id.* at 535.

23       Plaintiff will be patently unable to meet these strict standards for punitive damages.  Even

24   if Defendant mishandled his situation somehow (which Defendant vigorously denies), he can

25   point to no evidence of the type of malicious, "despicable" conduct that he must show.  He was

26   subject to termination in any event because he undisputedly could not return to work at the end

27   of the 12-week period mandated by the FMLA and CFRA.  He allegedly had his girlfriend fax

28   his medical form to a busy fax machine with no indication as to who the document was for (and

17

1  no indication on its face that Plaintiff had the type of "serious health condition" that the FMLA

2  and CFRA cover).  The only "accommodation" he requested was vague and there is no evidence

3  it would have actually helped him.  He had previously been disciplined for missing work and he

4  is unable to recall why he was absent on those numerous occasions.  Even when given an

5  opportunity at his deposition to state what he believes was the reason for his termination, he

6  admitted that he did not know.  Under these circumstances, he simply cannot show that

7  Defendant behaved so horribly that punitive damages are warranted.

8  **IV.    CONCLUSION**

9      For the reasons stated herein, Defendant requests that summary judgment, or in the

10  alternative summary adjudication, be granted in its favor.

11  DATED: September 5, 2008                    SEYFARTH SHAW LLP

12

13                                              By _____
                                                     Jonathan D. Martin

14                                              Attorneys for Defendant
                                                KAISER FOUNDATION HEALTH PLAN,
15                                              INC.

16

17

18

19

20

21

22

23

24

25

26

27

28  SF1 28332144.1