Exhibit "D"

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                       ---oOo---
 4
 5   FERNANDO DAROSA,
 6              Plaintiff,
 7        vs.                         No. 3:07-CV-03114-SI
 8   KAISER FOUNDATION HEALTH PLAN,
     INC.,
 9
                Defendant.
10   _____/
11
12           DEPOSITION OF FRANK DUSTIN, M.D.
13                Volume I, Pages 1 - 132
14                  Monday, May 12, 2008
15
16
17
                      CERTIFIED COPY
18
19
20
21   REPORTED BY: CYNTHIA LEW, RPR, CSR No. 11999
22
23                    TOOKER & ANTZ
           COURT REPORTING & VIDEO SERVICES
24          350 SANSOME STREET, SUITE 700
           SAN FRANCISCO, CALIFORNIA 94104
25                 (415) 392-0650
```

1   just talking about expiring.  And it looks like, on this
2   occasion, I thought he needed just a few more days off
3   for some reason and that he could go back to work on
4   9/6/05.
5       Q.   And that's your signature on the bottom of this
6   document?
7       A.   Yes.
8       Q.   Are you able to recall why you put him off work
9   for roughly this additional one-week period?
10      A.   I don't recall.
11      Q.   Do you remember why you felt able to say at
12  this time that he would be able to return to full duties
13  with no restrictions on a particular date?
14      A.   I don't recall.  But I assume it would be
15  because certain symptoms were now controlled.
16      MR. MARTIN:  We'll mark the next document.
17  This will be Defendant's Exhibit 7.
18              (Exhibit No. 7 was marked.)
19      MR. MARTIN:  Q.  Do you recognize this document
20  that we've marked as Defendant's Exhibit 7?
21      A.   Yes.
22      Q.   And as you're doing, go ahead and feel free to
23  look at the file if you need to.
24      A.   Yeah.  This is the document that we were
25  talking about a short while ago.

1   Q.   And just tell us briefly what this document is.
2   A.   It's, again, a visit verification, an off-work
3 slip.  This is the one that the chart note is in the
4 computer, and I put him off from January 25th to March
5 25th, 2006.
6   Q.   That's your signature at the bottom of the
7 document?
8   A.   Yes.
9   Q.   And you prepared this document on January 24th,
10 2006?
11  A.   Yes.
12  Q.   Do you see any kind of note in the file there
13 that might be related to this particular form?
14  A.   Well, Page No. 2 is the progress note from
15 January 24th, 2006.  But again, this note is not
16 handwritten.  It is in the computer file and hasn't been
17 downloaded.
18       MR. MARTIN:  We'll mark the next document as
19 Defendant's Exhibit 8.
20            (Exhibit No. 8 was marked.)
21       THE WITNESS:  So this is it downloaded.
22       MR. MARTIN:  Q.  So Defendant's Exhibit 8 you
23 believe is the E-chart that was referenced --
24  A.   Yes.
25  Q.   -- in the file there?

77

1   A.   Sorry.  Yes.

2   Q.   Okay.  So Exhibit 8, would this be, to your
3   knowledge, your complete notes in terms of your meeting
4   with Mr. Darosa on January 24th, 2006?

5        MR. KELLER:  Objection.  Calls for speculation
6   as if this is the complete note in the computer system.
7   Lacks foundation.

8        THE WITNESS:  Well, this is all that's left of
9   the visit.  I may have had a scratch pad, again, that
10  would have been thrown away.  But this is the summary
11  note of the visit.

12       MR. MARTIN:  Q.  So let's work with both
13  Exhibit 7 and Exhibit 8 together.  That may help you --
14  A.   Yes.
15  Q.   -- with your recollection as to the issues
16  reflected in these documents.

17       So looking at Exhibit 7, with this document,
18  you're putting Mr. Darosa off work for about a two-month
19  period.  Is that right?
20  A.   Yes.

21       MR. KELLER:  Objection.  The document speaks
22  for itself.

23       MR. MARTIN:  Q.  Why did you elect to put him
24  off work for two months at this time?
25  A.   He was functioning poorly and needed medication

1  imagine that's what I thought it would take for him to
2  get readjusted to the new regimen.  However, there are
3  times when I'll take into account patients' personal
4  issues and kind of gen- -- I'm often generous with
5  amounts of time off.
6       Q.  So as you sit here today, you have no reason to
7  believe you put Mr. Darosa off work for this two-month
8  period of time for any reason other than to adjust his
9  balance of medications?
10      A.  As far as I know, it was to adjust his
11 medications.
12      Q.  What did you envision Mr. Darosa doing during
13 this two-month period when he wouldn't be working?
14          MR. KELLER:  Objection.  Calls for speculation;
15 lacks foundation.
16          THE WITNESS:  Well, I don't know what he would
17 do with his days, as long as he didn't drive.  But I was
18 hoping that he would take the medicine like I recommended
19 and then to let me know usually every week or two how
20 it's helping or not.  And then to tell him in return,
21 okay, raise this or lower this and adjust things.
22          MR. MARTIN:  Q.  What was different about this
23 occasion which made you decide to put him off work as
24 opposed to previous occasions when you adjusted his
25 medication but didn't feel the need to put him off work?

1  MR. MARTIN: Let me introduce the next two
2  exhibits. These will be Defendant's Exhibit 9 and 10.
3      (Exhibits No. 9 and 10 were marked.)
4  MR. MARTIN: Q. Dr. Dustin, looking at the
5  exhibit that we've mark as Defendant's Exhibit 9, do you
6  recognize this document?
7      A. Yes.
8      Q. What is this document?
9      A. This is another work slip. I placed him off
10 work from March 25th to April 25th, 2006.
11     Q. So this is another month on top of the two
12 months that we had talked about previously. Correct?
13     A. Yes.
14     Q. And because you didn't check off the line that
15 discusses returning to full duties with no restrictions,
16 is it fair to assume that when you prepare -- well,
17 strike that.
18     Is that your signature at the bottom of this
19 document, Exhibit 9?
20     A. Yes.
21     Q. Did you complete it on March 24th, 2006?
22     A. Yes.
23     Q. Now, is it fair to say that, because you didn't
24 complete the line about returning to full duties with no
25 restrictions, that at the time you completed this form,

FRANK DUSTIN, M.D. - 5/12/08

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2         I, CYNTHIA LEW, CSR 11999, duly authorized to
 3   administer oaths, hereby certify that at the commencement
 4   of the foregoing deposition, the witness stated, under
 5   penalty of perjury, that he or she would testify the
 6   truth, the whole truth, and nothing but the truth in the
 7   within-entitled cause; that said deposition was taken at
 8   the time and place therein stated; that the testimony of
 9   said witness was reported by me by me and was thereafter
10   transcribed by me or under my direction into typewriting
11   by computer; that the foregoing is a full, complete, and
12   true record of such testimony; and that the deponent or a
13   party requested review of the deposition prior to the
14   completion of the deposition; and that the deponent was
15   given an opportunity to review the deposition.
16         I further certify that I am not of counsel nor
17   attorney for either or any of the parties in the
18   foregoing deposition and caption named, nor in any way
19   interested in the outcome of the cause named in
20   said caption.
21
                              _____
22                                   DEPOSITION OFFICER
     I hereby certify this copy is a
23   true and exact copy of the original.
24   _____        DATED: MAY 22 2008
         DEPOSITION OFFICER
25
```

TOOKER & ANTZ COURT REPORTING & VIDEO SERVICES
(415) 392-0650

132