```
00001
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                    ---oOo---
 4
 5   FERNANDO DAROSA,
 6           Plaintiff,
 7       vs.            No. 3:07-CV-03114-SI
 8   KAISER FOUNDATION HEALTH PLAN,
     INC.,
 9
             Defendant.
10   _____/
11
12
13          DEPOSITION OF ANASTACIA FREITAS
14              Tuesday, June 10, 2008
15
16
17
18
19
20
21   REPORTED BY: CYNTHIA LEW, RPR, CSR No. 11999
22
23              TOOKER & ANTZ
         COURT REPORTING & VIDEO SERVICES
24        350 SANSOME STREET, SUITE 700
         SAN FRANCISCO, CALIFORNIA 94104
25              (415) 392-0650
```

```
00002
 1                I N D E X
 2
 3  DEPOSITION OF ANASTACIA FREITAS
 4
 5  EXAMINATION BY:                    PAGE
 6    MR. MARTIN                        5
 7             ---oOo---
 8
 9           E X H I B I T S
10  (For Defendant)
11  IDENTIFICATION    DESCRIPTION           PAGE
12    1    Two-page subpoena, dated June 6, 2006   8
13    2    Three-page notice of deposition,        9
         dated June 5, 2008
14
      3    "Visit Verification/Family Leave,"     64
15         dated January 24, 2006
16
17             ---oOo---
18
19
20
21
22
23
24
25
```

```
00003
 1        BE IT REMEMBERED that, pursuant to Notice
 2   of Taking Deposition, on Tuesday, June 10, 2008,
 3   commencing at the hour of 10:11 o'clock a.m. thereof,
 4   at the Law Offices of Seyfarth Shaw, 560 Mission
 5   Street, 31st Floor, San Francisco, California 94105
 6   before me, CYNTHIA LEW, duly authorized to administer
 7   oaths pursuant to Section 2093(b) of the California
 8   Code of Civil Procedure, personally appeared
 9             ANASTACIA FREITAS,
10   called as a witness on behalf of the Defendant, and
11   the said witness, having first been placed under
12   oath, was thereupon examined and testified as
13   hereinafter set forth.
14
15             A P P E A R A N C E S
16        The Offices of Jeremy L. Friedman, 2801
17   Sylhowe Road, Oakland, California 94602, represented
18   by JEREMY L. FRIEDMAN, Attorney at Law, appeared as
19   counsel on behalf of the Plaintiff.
20        The Law Offices of Seyfarth Shaw, 560
21   Mission Street, Suite 3100, San Francisco, California
22   94105, represented by JONATHAN D. MARTIN, Attorney at
23   Law, appeared as counsel on behalf of the Defendant.
24        Also present: Michael Santy, videographer.
25
```

00051
1   Q.  Member services was the department where
2  Mr. daRosa worked at Kaiser?
3   A.  Yes.
4   Q.  To your knowledge, did Mr. daRosa ever miss
5  work while Ms. Roper was his supervisor?
6   A.  Yes.
7   Q.  How often did he miss work when
8  Mr. daRosa -- I'm sorry -- when Ms. Roper was his
9  supervisor?
10    A.  I don't -- I don't recall.
11    Q.  Do you remember any occasion when
12  Mr. daRosa missed work when Ms. Roper was his
13  supervisor?
14    A.  I remember one occasion at lunchtime, and I
15  was going back to work.  And we'd walk back to work
16  together, but that day, just so happened I went to
17  lunch earlier, so I had to go back to work a little
18  bit earlier.  So I left him in the car, and I went in
19  to work.  And then when I got off work, he was out,
20  in the car.  He was -- yeah.
21    Q.  That was a day on which Mr. daRosa was
22  supposed to be working?
23    A.  Right.  He was supposed to go back after
24  lunch.
25    Q.  Do you know why he was waiting in the car

```
00052
 1  on this occasion?
 2          MR. FRIEDMAN:  Objection.  Misstates the
 3  testimony.
 4          MR. MARTIN:  Q.  What was he doing in the
 5  car on this occasion?
 6      A.  He was sleeping.
 7      Q.  Were you in the course of going to work
 8  together on this occasion?  In other words, what
 9  caused you to be in the car together on this
10  occasion?
11      A.  We were going to drive home together.  We
12  went to work together that morning.
13      Q.  I see.  What time of day was it when you
14  found him sleeping in the car?
15      A.  It was 5:00 o'clock.  I'd get off at 5:00.
16      Q.  So was he waiting in the car for you after
17  his workday?  Was that --
18          MR. FRIEDMAN:  Objection.  Assumes --
19          MR. MARTIN:  Q.  Was that what caused this
20  to happen?
21          MR. FRIEDMAN:  Objection.  Assumes facts
22  not in evidence; misstates testimony.
23          MR. MARTIN:  Q.  Okay.  What time of day
24  did this occur, when you found him sleeping in the
25  car?
```

```
00074
 1          MR. FRIEDMAN:  Objection.  Asked and
 2  answered.
 3          Go ahead.  You can answer it again, though.
 4          THE WITNESS:  No.
 5          MR. MARTIN:  Q.  Ultimately, you did fax
 6  the document to member services.  Correct?
 7      A.  Yes.
 8      Q.  Do you remember the date and time that you
 9  faxed it?
10      A.  Well, I started work at 8:00 in the
11  morning.  And I faxed it about two or three times,
12  and it came back failed.  It wasn't going through.
13  And I wanted to make sure it got there before they
14  opened the office -- opened member services.  So then
15  finally it was transmitted, and I got a copy showing
16  that it had been transmitted.
17      Q.  How did you know that the fax had initially
18  failed?
19      A.  Because we get confirmation after we fax
20  something.
21      Q.  So there was some kind of printed
22  confirmation that the fax had failed a couple of
23  times?
24      A.  Correct.
25      Q.  Do you remember what you did with those
```

```
00078
 1     Q.  Was that at the same time when you told him
 2  you had faxed it?
 3     A.  Yes.
 4     Q.  What did he say when you told him that you
 5  had walked over the document?
 6     A.  He asked if she had received it.
 7     Q.  And how did you respond to that?
 8     A.  I explained to him how I dropped it off.
 9     Q.  Okay.  So let's talk about that.  So you
10  walked across the street and hand-delivered the
11  document to some place in member services.  Correct?
12     A.  I went into member services, and I said
13  that I needed to see Marjorie Roper.  And one of the
14  girls there said, "She's right down the hall.  Her
15  office is to the left."
16          So I went down the hall.  And Marjorie
17  Roper was on the phone, but her door was cracked open
18  a little bit.  So I knocked on her door, and I said,
19  "I have Fernando's work slip here."  And she just
20  pointed to her box by the door, for me to drop it off
21  (indicating).  So I left it in the box, and then I
22  left.
23     Q.  Okay.  Let's back up for a second and take
24  that step by step.  So you walk to member services.
25          Who do you first speak to there?
```

```
00168
 1         CERTIFICATE OF DEPOSITION OFFICER
 2         I, CYNTHIA LEW, CSR 11999, duly authorized
 3  to administer oaths, hereby certify that at the
 4  commencement of the foregoing deposition, the witness
 5  stated, under penalty of perjury, that he or she
 6  would testify the truth, the whole truth, and nothing
 7  but the truth in the within-entitled cause; that said
 8  deposition was taken at the time and place therein
 9  stated; that the testimony of said witness was
10  reported by me by me and was thereafter transcribed
11  by me or under my direction into typewriting by
12  computer; that the foregoing is a full, complete, and
13  true record of such testimony; and that the deponent
14  or a party requested review of the deposition prior
15  to the completion of the deposition; and that the
16  deponent was given an opportunity to review the
17  deposition.
18         I further certify that I am not of counsel
19  nor attorney for either or any of the parties in the
20  foregoing deposition and caption named, nor in any
21  way interested in the outcome of the cause named in
22  said caption.
23                    DEPOSITION OFFICER
24  I hereby certify this copy is a
    true and exact copy of the original.
25
```